## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

**TREMAINE MANLEY,**

      **Plaintiff,**

   **v.**

                           **Civil Action No. 4:25-cv-01810**

**EXPERIAN INFORMATION**
**SOLUTIONS, INC.,**

      **Defendant.**

### EXPERIAN INFORMATION SOLUTIONS, INC.'S
### MOTION FOR SUMMARY JUDGMENT

COMES NOW Defendant Experian Information Solutions, Inc. ("Experian"), by and through its undersigned counsel, and, pursuant to Federal Rule of Civil Procedure 56, moves for summary judgement in its favor in this matter. In support thereof, Experian would show the Court as follows:

### STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Experian is a consumer reporting agency as defined by the FCRA and maintains credit files for millions of consumers. Declaration of Teresa Fievez ("Exp. Decl.") ¶ 2.

2. Experian maintains procedures to assure maximum possible accuracy of the information it reports on consumers consistent with the requirements of the FCRA. *Id*. at ¶ 3.

3. Experian, like the other major credit reporting agencies ("CRAs"),

regularly receives consumer credit information from various sources ("data furnishers") around the country.  Experian only allows entities whom it thoroughly vets to contribute consumer credit information in accordance with strict contracted obligations, mentioned again below for emphasis. *Id*. at ¶ 4.

4.      The process by which Experian receives, sorts, and stores information is largely electronic. *Id*. at ¶ 5.

5.      Experian monitors every monthly submission by every data furnisher to assure that no information violates the prescriptions of the FCRA or the industry standards applicable to their data. *Id*. ¶ 6.

6.      Data furnishers are contracted and pledge to make every effort to report only accurate information and adhere to the FCRA sections applicable to their reporting. *Id.* ¶ 7.

7.      Experian also thoroughly credentials every data furnisher and its data before and after it is permitted to transmit information for inclusion in the credit reporting database. Experian has systemic processes which alert it if a data furnisher's monthly submission exceeds expected thresholds or alters from its trended and usual reporting patterns. *Id*. ¶ 8.

8.      These include banks, credit unions, automobile dealers, student loan providers and others (these sources are known as "furnishers" within the credit reporting industry and under the FCRA).  *Id*. ¶ 9.

9.     Experian maintains procedures to ensure that its reinvestigations are reasonable and consistent with the requirements of the FCRA. *Id.*  ¶ 17.

10.     Upon receipt of the ACDV or CDV, the furnisher is required to investigate the information and either verify or update the disputed information and certify those findings to Experian. Then, the ACDV or CDV is completed by the data furnisher and returned to Experian.  When a furnisher responds to the ACDV or CDV, they certify to Experian that they have confirmed the accuracy of the information contained in the response, which includes confirmation that the furnisher opened and reviewed all supporting documents submitted to it by Experian (if any were first provided by the consumer).  Experian then reviews the furnisher's response in accordance with Experian's own policies and procedures before updating its reporting based on the information provided by the data furnisher.  Once the reinvestigation is complete, Experian sends a notice and summary of the results to the consumer.   Experian internally refers to that notice and summary as a Consumer Disclosure Final ("CDF"). *Id*. ¶ 12.

11.     Bankruptcy courts do not directly send information to Experian. However, bankruptcy records are still publicly available.  Experian contracts with LexisNexis Risk Data Management Inc. ("Lexis") in order to obtain public records of consumer bankruptcies filed under Chapter 7 and Chapter 13 of the Bankruptcy Code, and Lexis provides information to Experian based on data contained in

petitions, dismissals, conversions, and discharges, along with relevant revisions, updates, or edits to such information. *Id*. ¶ 13.

12. Lexis sends such updates to Experian daily, and Experian has a policy to update bankruptcy records on a consumer's credit file within 48 hours. Experian must match bankruptcy docket updates it receives from Lexis to individual consumers using Experian's data, using Experian's data, relying on personal identifying information to match bankruptcy docket updates received from Lexis to an individual consumer's credit file. *Id*. ¶ 14.

13. Lexis is a reporting agency that verifies public records for Experian. Experian sometimes receives consumer disputes with documentation indicating that Lexis has removed disputed public record information from Lexis's database, accompanied by a request from the consumer that Experian delete similar information from the consumer's file. However, Experian is unable to determine why public record data is removed from Lexis's internal database, and cannot accept such documentation as proof to remove the disputed public record information from its own consumer credit file. *Id*. ¶ 15.

14. Bankruptcies that are dismissed before being discharged remain on a consumer's credit file as having been filed. The credit report for Plaintiff dated April 8, 2025 identifies both of his dismissed Chapter 7 bankruptcies and in the Status field for the tradelines states the "Chapter 7 bankruptcy dismissed." *Id*. ¶ 24,

Ex. D.

15.    Experian will only initiate a reinvestigation in response to a dispute directly from the consumer or indirectly from a reseller or other entity who properly represents the consumer. This is a precautionary measure in place to protect the consumer and aligns with the FCRA and applicable regulatory guidance. When a dispute appears to have been sent by someone other than the consumer (an unverified third-party or credit repair organization), Experian notifies the consumer of its precautionary inaction and provides the consumer with methods of contacting Experian directly to verify the request is authorized as follows:

> We received a recent request regarding your credit information that does not appear to have been sent directly by you or to be authorized by you. As a precautionary measure, we have not taken any action on your alleged request. According to the federal Fair Credit Reporting Act, "if the completeness or accuracy of any item of information contained in a consumer s file at a national consumer credit reporting company is disputed by the consumer and the consumer notifies the company directly of such dispute, the company shall reinvestigate free of charge." Therefore, you can dispute any inaccurate information directly with Experian for free.

> If you believe that information in your personal credit report is inaccurate or incomplete, please call us at the phone number 833-421-3400, or visit our secure website to upload your documents at www.experian.com/dispute.

Often, disputes are sent by credit repair organizations. However, the disputes from credit repair organizations often do not have merit and are frequently submitted

without consumer knowledge or review. Experian provides guidance that allow its agents to recognize these batches of disputes based on like criteria including the envelopes that the disputes are sent in, the handwriting on the envelopes, the formatting of the dispute letters, lack of a wet consumer signature, and the specific content of the disputes. Additionally, a dispute that is not sent directly by a consumer often has postmarks indicating that the dispute was sent from a state other than the state in which the consumer lives. Experian's process of handling disputes that are not directly from consumers complies with the FCRA and protects consumers. *Id*. ¶ 16.

16.    Plaintiff claims he mailed a detailed dispute letter via certified mail on or about April 4, 2024. Dkt 1 at 7.

17.    Experian did not receive a detailed dispute from Plaintiff via certified mail on or about April 4, 2024. Exp. Decl. ¶ 18.

18.    On April 6, 2024, Plaintiff contacted Experian through the internet, and made a dispute related to the accuracy of his 2023 Chapter 7 bankruptcy tradeline. *Id*. ¶ 19.

19.    Experian sent a CDV to Lexis on April 6, 2024.  Lexis responded to Experian verifying that the Bankruptcy information was accurately reporting and provided the book, page, and sequence number of the bankruptcy record.  *Id*. at ¶ 20, Ex. A.

20.     Contrary to Plaintiff's claim in his Complaint, Experian sent Claimant a notification of the results of this reinvestigation in the form of a CDF dated April 30. The CDF contains the required information showing how Plaintiff's tradelines were verified. *Id*. at ¶ 21, Ex. B.

21.     The Court may take judicial notice of proceedings in other courts, including the records and dockets of federal bankruptcy courts, including the United States Bankruptcy Courts of the Southern District of Texas, because they are matters of public record capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

22.     The records of the United States Bankruptcy Court for the Southern District of Texas confirm the existence of a Chapter 7 bankruptcy filed on June 23, 2023 by Tremaine Manley case Number 23-32245-JPN, that was dismissed in August of 2023.

23.     The records of the United States Bankruptcy Court for the Southern District of Texas confirm the existence of a Chapter 7 bankruptcy filed in April 2, 2024 by Tremaine Manley case Number 24-31511-JPN, that was dismissed in April of 2024.

24.     Experian received a letter dated March 26, 2025, from someone purporting to be the Plaintiff. *Id*. at ¶ 22.

25.     Experian determined that this dispute was not sent directly by Claimant, and consistent with its policies, did not initiate a reinvestigation as a precautionary measure.  Experian sent Plaintiff a letter dated April 8, 2025, explaining that the March 26, 2025 dispute letter did not appear to have been sent directly by Plaintiff and that Experian had not taken any action as a precautionary measure.  The letter instructed Plaintiff to call Experian or visit Experian's dispute website if he believed there was inaccurate information in his credit report.  Exp. Decl. ¶ 23, Ex. C.

## **INTRODUCTION**

Plaintiff's Complaint does not contain any causes of action.  To the best that Experian can interpret, Plaintiff alleges that Experian (I) failed to maintain reasonable procedures to assure maximum possible accuracy in violation of 15 U.S.C. § 1681e(b); (II) failed to conduct a reasonable reinvestigation of a disputed account in violation of 15 U.S.C. § 1681i(a); (III) engaged in willful noncompliance, 15 U.S.C. § 1681(n); (IV) engaged in negligent noncompliance, 15 U.S.C. § 1681o; (V) failed to provide a complete disclosure of the sources and parties that provided or verified data in violation of 15 U.S.C. § 1681g; and (VI) failed to provide information showing how each item was verified.  *See generally* Compl.

Plaintiff's Complaint is based on one alleged dispute of his credit report with Experian.  The first alleged dispute, the dispute alleged to have occurred on April 4, 2024, does not exist. The Plaintiff has stated in his Complaint that he sent such a

dispute via certified mail, but no such certified mail was received.  SOF ¶ 17. Plaintiff has failed to provide the certified mail receipt or any other proof that the April 4, 2024 dispute as claimed in his Complaint was ever provided to Experian. The dispute from early April 2024 was made via the internet and focused on Plaintiff's dispute regarding the accuracy of Plaintiff's 2023 bankruptcy tradeline. *Id*. ¶ 18. In his Complaint, Plaintiff claims that the April 8, 2025 letter was sent to him in response to his April 4, 2024 dispute (Dkt. 1 at 5) when in actuality the April 8, 2025 letter was sent in response to a dispute from March 26, 2025 that Experian determined was not sent directly by Plaintiff, and consistent with its policies, did not initiate a reinvestigation as a precautionary measure.  Experian sent Plaintiff a letter dated April 8, 2025, explaining that the March 26, 2025 dispute letter did not appear to have been sent directly by Plaintiff and that Experian had not taken any action as a precautionary measure.  The letter instructed Plaintiff to call Experian or visit Experian's dispute website if he believed there was inaccurate information in his credit report.  SOF ¶ 23.  Plaintiff did not respond to Experian's April 8, 2025 letter.

Summary judgment in favor of Experian is warranted.  Plaintiff has produced no evidence that the bankruptcy tradelines or any other tradelines are reported incorrectly and no evidence that Experian failed to maintain reasonable procedures to ensure the accuracy of its reporting. Plaintiff has produced no evidence of damages sufficient to confer this Court with subject matter jurisdiction. At best,

Plaintiff offers completely unsupported allegations that are insufficient to create a genuine issue of fact.

## **LEGAL STANDARD**

Summary judgment is appropriate where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A court should grant summary judgment "if a party, after adequate opportunity for discovery, 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Tolton v. Am. Biodyne*, 48 F.3d 937, 941 (6th Cir. 1995) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The movant may also obtain summary judgment by showing "an absence of evidence to support the nonmoving party's case." *Cincom Sys. v. Novelis Corp*., 581 F.3d 431, 435 (6th Cir. 2009) (*quoting Celotex*, 477 U.S. at 325); Fed. R. Civ. P. 56(c). Courts draw reasonable inferences in favor of the non-moving party. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000). "[T]he mere existence of some alleged factual dispute . . . will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis added). "Only disputes over facts that might affect the outcome of the [litigation] . . . will properly preclude the entry of summary judgment." *Id*. at 248. Once the

moving party shows there is no genuine issue of material fact, the non-moving party then "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial" and warrants summary judgment. *Celotex,* 477 U.S. at 323. Finally, "the nonmoving party must present 'significant probative evidence' to show that 'there is [more than] some metaphysical doubt as to the material facts.'" *Lewis v. Ohio Pro. Elec. Network*, 248 F. Supp. 2d 693, 697 (S.D. Ohio 2003) (quoting *Moore v. Philip Morris*, 8 F.3d 335, 339 (6th Cir. 1993)).

## **ARGUMENT**

### I.    **PLAINTIFF CANNOT ESTABLISH A CLAIM UNDER 15 U.S.C. § 1681e(b).**

Section 1681e(b) of the FCRA provides the standard applicable to credit reporting agencies for accuracy of information and requires that in preparing consumer reports, a credit reporting agency must follow "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). To establish liability under § 1681e(b), a plaintiff must prove four elements: (1) the defendant reported inaccurate information about the plaintiff to third parties; (2) the defendant either negligently

or willfully failed to follow reasonable procedures to assure maximum possible accuracy of the information about the plaintiff; (3) the plaintiff was injured; and (4) the defendant's conduct was the proximate cause of the plaintiff's injury. *Twumasi-Ankrah v. Checkr, Inc.*, 954 F.3d 938, 941 (6th Cir. 2020) (*citing Nelski v. Trans Union, LLC*, 86 F. App'x 840, 844 (6th Cir. 2004)). The statute "does not impose strict liability for incorrect information appearing on an agency's credit reports." *Butt v. FD Holdings, LLC*, No. 2:18-cv-13641, 2019 U.S. Dist. LEXIS 94705, at *9 (E.D. Mich. June 6, 2019), *aff'd*, 799 F. App'x 350 (6th Cir. 2020).

### A.    Plaintiff Offers No Evidence of Inaccuracy

Plaintiff's claim fails because he has not offered and cannot offer any evidence whatsoever to establish the inaccuracy of the relevant accounts.  In discovery, Plaintiff produced no documents at all to support any claim of inaccuracy.  To the contrary, Plaintiff admits in his Complaint that he filed June 2023 and August 2024 bankruptcies that were both dismissed. Dkt. 1 at 5. Additionally, Plaintiff has not provided any evidence showing that the any of his tradelines were reported inaccurately. Therefore, as a threshold issue, Plaintiff's § 1681e(b) claims fail.

The publicly available records of the United States Bankruptcy Court for the Southern District of Texas confirm the existence of a Chapter 7 bankruptcy filed in June of 2023 by Plaintiff, case Number 23-32245-JPN. The 2023 bankruptcy was dismissed in August of 2023. Plaintiff filed a Chapter 7 bankruptcy in April of 2024,

case Number 24-31511-JPN. The 2024 bankruptcy was dismissed in April of 2024. SOF ¶¶ 22-23. Therefore, on both the face of the complaint and judicially noticeable record of the United States Bankruptcy Court, Experian's reporting was accurate, and Plaintiff's FCRA claims fail at the outset.

### B.    Experian Does Not Lack Reasonable Procedures

Even if Plaintiff's claim does not fail at the first prong (it does), Plaintiff's claim would fail the second prong. Plaintiff has no evidence that Experian negligently or willfully failed to follow reasonable procedures to assure maximum possible accuracy of the information about the plaintiff. The FCRA is not a strict liability statute – Plaintiff must also show that any inaccurate reporting was due to a failure to follow reasonable procedures. He has not done so. Experian's procedures comply with law, and Plaintiff has produced no required evidence to support such a claim. Plaintiff fails to argue any manner in which the CRAs failed to follow reasonable procedures to ensure the "maximum possible accuracy" of their reports, or that any such failure caused damages to Plaintiff, as required under a § 1681e(b) cause of action. Plaintiff fails to show that any alleged inaccurate entry is "misleading in such a way and to such an extent that it can be expected to adversely effect credit decisions. *Sepulvado v. CSC Credit Servs., Inc., 158 F.3d 890 (5th Cir. 1998).* Experian's Motion for Summary Judgment contains declarations that demonstrate the reasonable procedures Experian follows. *See* SOF ¶¶ 2-13. credit

reporting agency's obligation under the FCRA is to employ reasonable procedures, not perfect ones. *See Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004). The facts in the record show Experian followed its reasonable procedures following the receipt of Plaintiff's internet dispute and dispute letter, timely responding to and investigating Plaintiff's internet disputed and providing a response and directions to a request that Experian believed to have come from a third-party SOF. ¶¶ 17-22.

### C. Plaintiff Suffered No Injury as Proximate Cause of Experian's Alleged Violations

Finally, Plaintiff's § 1681e(b) claim fails at the third and fourth prong because he has no evidence that any alleged inaccuracies were the result of Experian's failure to follow reasonable procedures. As the non-moving party, it is Plaintiff's burden to affirmatively produce this evidence at this stage of the litigation to prove that there is a genuine dispute as to his damages. *Matsushita v. Zenith Radio Corp.*, 475 U.S. 572, 585-87. Under the FCRA, a "reduction in available credit, by itself, furnishes no basis for actual damage**s**." *Smith v. Santander Consumer USA, Inc.*, 703 F.3d 316, 317 (5th Cir. 2012) (per curiam). "The real damage from an erroneously reduced credit rating, which causes lower available borrowing limits, occurs if the consumer's cost of actual borrowing increases or if he is refused credit altogether." *Id.* Furthermore, the FCRA permits "recovery for humiliation and

mental distress and for injury to one's reputation and creditworthiness." *Sapia v. Regency Motors of Metairie, Inc.*, 276 F.3d 747, 753 (5th Cir. 2002). However, "a claim related to emotional distress requires a degree of specificity and must be supported by evidence of genuine injury, such as the observations of others, corroborating testimony, or medical or psychological evidence." *Bacharach v. Suntrust Mortgage, Inc.*, 827 F.3d 432, 436 (5th Cir. 2016) (citation modified).

Plaintiff claims that his damages are that he "was denied credit opportunities, including an auto loan and a lease application; he has experienced increased insurance premiums; and has endured humiliation, anxiety, and emotional distress due to false portrayal of his financial character.  Moreover, Plaintiff operates a small business and was denied a line of credit that would have helped expand operations.  The rejection was based on Experian's incorrect credit report." *Compl.* at 2-3. Plaintiff has produced three documents that purport to be communications that support his damages claims from the two-year period prior to filing the Complaint and the date of the Complaint.  Of these three documents, only one of them references a denial of credit because of information found on a credit report.  The denial of his Celtic Bank credit application is stated to be because of the number of recent inquiries on his credit bureau report found on his Clarity Services, Inc. credit report.  The communication also references Plaintiff's length of time since an online payday loan opened.  Plaintiff did not produce the application for credit related to

Celtic Bank. Plaintiff's Experian credit report indicates that he had one hard inquiry dated January 9, 2024. SOF ¶ 14. Plaintiff provides zero proof that this one hard inquiry is inaccurate. Plaintiff also provides no proof that Celtic Bank relied on his Experian credit report in determining the excessive recent hard inquiries. Even if Plaintiff's unsupported allegations were found to be correct, Plaintiff has failed to show that his cost of actual borrowing increased or that he was refused credit altogether. *See Smith* 703 F. 3d 316, 317.

Additionally, as to Plaintiff's allegations for damages related to his small-business, the Courts have held that commercial business-related damages fall outside of the scope of FCRA and are not recoverable. *Bacharach v. Suntrust Mortgage*, 827 F.3d 432 (5th Cir. 2016).

## II.    PLAINTIFF CANNOT ESTABLISH A CLAIM UNDER 15 U.S.C. § 1681i

15 U.S.C. § 1681i of the FCRA states, in pertinent part:

> If the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate free of charge and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer.

In the Fifth Circuit, "inaccuracy is a threshold requirement for a claim under FCRA for failure to conduct a reasonable reinvestigation of disputed information."

*Reyes v. Equifax Information Services, LLC*, 140 F. 4th 279 (5th Cir. 2025).  Like Plaintiff's § 1681e(b) claim, his § 1681i claim fails because of his inability to demonstrate that the Account is inaccurate.

However, even assuming the bankruptcy tradelines or other tradelines were inaccurate – which they were not – Plaintiff's § 1681i claim independently fails because it is wholly unsupported. First, Plaintiff provided no evidence supporting his allegation that any of his accounts were reported inaccurately.  Armed with nothing but Plaintiff's threadbare assertion that his bankruptcies were dismissed, Experian did not have sufficient evidence to delete any accounts.  Instead, it forwarded the dispute to Lexis to verify the Bankruptcy information.  In addition, as a CRA, Experian is entitled to rely on the furnishing entity to investigate a dispute.

As a matter of law, Experian's reinvestigations were reasonable, and Plaintiff has produced no evidence to the contrary. Accordingly, summary judgment in Experian's favor is appropriate. In this case, Plaintiff disputed one of his tradelines associated with his dismissed bankruptcies. In accordance with its procedures, Experian then contacted the relevant furnishers via CDVs. SOF ¶ 19. Here, the relevant furnishers stood in "a far better position to make a thorough investigation" of Plaintiff's dispute. *See, e.g., Alston v. Equifax Info. Servs., LLC*, No. CV TDC-13-1230, 2016 WL 5231708, at *10 (D. Md. Sept. 21, 2016) (citations omitted) ("[T]he CRA is a third party, lacking any direct relationship with the consumer,"

and, therefore, the reasonableness requirement attached to a CRA's reinvestigation duty "limits its obligation on account of its third-party status and the fact that it is repeating a task already completed once."). In response to the disputes submitted by Plaintiff, the furnishers confirmed the accuracy of Experian's reporting. SOF ¶ 19. Courts repeatedly found that this constitutes a reasonable reinvestigation. *See e.g.*, *Watkins v. Experian Info., Sols., Inc.*, No. 6:13-CV-00239-WSS-JCM, 2014 U.S. Dist. LEXIS 150321 (W.D. Tex. Sep. 8, 2014) (holding because Plaintiff did not assert that the furnisher in this case was an unreliable source of information, the defendant's reinvestigation procedures were reasonable where the defendant verified each disputed item by sending CDV forms to the furnishers and updated plaintiff's credit file based upon the responses to the requests.); *Pawlowski v. Experian Info. Sols., Inc*., No. 120CV1464LMBJFA, 2021 WL 2930076, at *4 (E.D. Va. July 12, 2021) (dismissing plaintiff's section 1681i claim where the defendant conducted the ACDV process and the plaintiff complained that the reasonableness of the ACDV process should go to the jury, because numerous courts have held that the ACDV process constitutes a reasonable reinvestigation as a matter of law and plaintiff provided no evidence to the contrary).

Finally, as with his § 1681e(b) claim, Plaintiff has failed to produce evidence to support his alleged damages. He has offered no expert testimony, no competent documents, and no other basis to quantify or substantiate how any conduct by

Experian affected his ability to obtain credit or caused him emotional distress. Therefore, summary judgment on his § 1681i claim is appropriate.

## III.    PLAINTIFF FAILS TO ESTABLISH A PERMISSIBLE PURPOSE CLAIM

In his Complaint, Plaintiff fails to allege any facts to plausibly identify any impermissible purpose that any third party in fact had in accessing his credit reports from Experian.  A conclusory allegation that there was no permissible purpose to obtain a credit report without any factual support is insufficient to state a plausible claim for relief. *See Jefferson-James v. Mercantile Adjustment Bureau LLC*, No. 6:24-CV-00068, 2025 LX 160145 (W.D. La. Jan. 8, 2025).

Plaintiff claims that Experian permitted hard inquiries on his credit file that he did not consent to. However, this misunderstands the requirements of the FCRA. Under section 1681b(a), a CRA may furnish a consumer credit report to a third party under several circumstances. In addition to "written instructions of the consumer" (1681b(a)(2)), consumer reporting agencies also may provide consumer reports pursuant to court orders (1681b(a)(1)), to child support agencies (1681b(a)(4)), and as is more common, to anyone the consumer reporting agency has reason to believe is using the consumer report for credit, employment, insurance, or government licenses, among other purposes (1681b(a)(3)). None of those enumerated permissible purposes require consumer consent before issuing of a consumer report.

*First Midwest Bancorp.*, 427 F.3d 1043, 1046-47 (7th Cir. 2005) ("[T]he statute does not require that consumers expressly approve each request for a report."); *Baker v. Trans Union LLC*, CV 07-8032, 2008 WL 4838714 at *4 (D. Ariz. Nov. 5, 2008) ("when a permissible purpose exists, 'parties may obtain, and consumer reporting agencies may furnish, consumer reports without the consumers' permission or over their objection.'") (citations omitted); *Chavez v. Premier Bankcard, LLC*, 1:11-cv-01101, 2011 WL 5417107 at *3 (E.D. Cal. Nov. 8, 2011) ("[S]ection 1681b makes it clear that consumer consent is not a prerequisite to release credit information to a creditor.").

Here Plaintiff provides no basis to infer that Experian furnished Plaintiff's credit report without reason to believe that the third party had a permissible purpose for obtaining the credit report, and his 1681(b) claim fails as a result. Because Plaintiff failed to plead the essential elements of his FCRA claims, therefore Court should grant Experian's Summary Judgment on Plaintiff's claim related to hard inquiries.

## IV.   PLAINTIFF CANNOT ESTABLISH A CLAIM UNDER 15 U.S.C. §§ 1681o or 1681n.

Plaintiff has not shown that Experian has "willfully" violated its obligations under the FCRA, let alone violated the FCRA at all. For a company to "willfully fail[] to comply" with the FCRA, *see* 15 U.S.C. § 1681n, it must act with "reckless

disregard"—i.e., "action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 68–69 (2007). "[A] company subject to [the] FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

In short, Experian's response to Plaintiff's disputes must have been "objectively unreasonable" to qualify as a willful violation of the FCRA. *See id.* at 70. "A credit reporting agency's reliance on information gathered by outside entities is reasonable so long as the information is not 'obtained from a source that was known to be unreliable' and is "not inaccurate on its face' or otherwise "inconsistent with the information [Experian] already had on file[.]'" *Hammoud v. Equifax Infor. Servs., LLC*, 52 F.4th 669, 675 (6th Cir. 2022) (quoting *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1240 (10th Cir. 2015) (internal citations omitted)). Because Plaintiff has produced no evidence suggesting Experian's responses to his disputes were "objectively unreasonable," his willfulness claim fails.

## V.    PLAINTIFF HAS NOT ESTABLISHED DAMAGES AND LACKS STANDING

Plaintiff has not put forth any evidence that, at trial, would allow him to

21

demonstrate sufficient injury to establish a claim under the FCRA or constitute a recoverable, Article III injury.

In order to have standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Butt v. FD Holdings, LLC*, 799 F. App'x 350, 352 (6th Cir. 2020) (*quoting Spokeo, Inc., v. Robins*, 578 U.S. 330, 338 (2016)). Plaintiff has not sustained his burden in this case for asserting injury sufficient for Article III standing because he has "not produced evidence sufficient to show that he has suffered an injury attributable to" Experian. *Black v. Gen. Info. Sols. LLC*, No. 1:15-cv-1731, 2018 U.S. Dist. LEXIS 30509, at *15 (N.D. Ohio Feb. 26, 2018).

Plaintiff claims that "as a direct and proximate cause of Experian's willful and negligent violations of the FCRA, Plaintiff has suffered significant harm. He has been denied credit opportunities, including an auto loan and a lease application; he has experienced increased insurance premiums; and has endured humiliation, anxiety, and emotional distress due to false portrayal of his financial character. Moreover, Plaintiff operates a small business and was denied a line of credit that would have helped expand operations. The rejection was based on Experian's incorrect credit report." Compl. at 2–3. The only evidence Plaintiff produced that purports to support his claimed denials within the two-year period before the

Complaint and up to the filing date consists of: (1) an email from Drivetime dated December 12, 2024, requesting additional information to process his application; (2) a communication from Celtic Bank dated February 16, 2024, denying his application for credit because of the number of recent inquiries on his credit bureau report, based on information in his Clarity Services, Inc. report, and referencing his "length of time since online payday loan opened"; and (3) an email from Snap RTO LLC denying an application for a lease-purchase agreement without giving any specific reasons for the denial.

Plaintiff did not produce the credit applications corresponding to any of the three relevant communications he provided to Experian. With respect to Celtic Bank, Plaintiff's Experian credit report reflects only one hard inquiry dated January 9, 2024. SOF ¶ 14. As stated above, Plaintiff provides no evidence that this single inquiry was not made with a permissible purpose. Plaintiff provides no evidence that Celtic Bank relied on his Experian credit report—as opposed to his Clarity Services, Inc. report—in concluding that he had an excessive number of recent inquiries. Even if Plaintiff's allegations about the Celtic Bank application were accepted as true, he has shown no actual damages resulting from that letter. A "credit line reduction by itself cannot constitute actual damages for the purpose of an FCRA claim." *Wagner v. BellSouth Telecomm., Inc.* 520 F. App'x 295, 298 (5th Cir. 2013) (per curiam) (citing *Smith v. Santander Consumer USA, Inc.*, 703 F.3d 316, 317 (5th Cir. 2012).

Plaintiff also vaguely asserts humiliation, anxiety, and emotional distress. Compl. at 2. In the Fifth Circuit, a "plaintiff seeking emotional distress damages is required to present 'evidence of genuine injury…' and to demonstrate 'a degree of specificity…'." *Wagner*, 520 Fed. Appx. at 298-99 (quoting *Cousin v. Trans Union Corp.*, 246 F.3d 359, 371 (5th Cir. 2001). While actual damages may include emotional distress, plaintiffs are required to allege more than "mere conclusory statements and must reasonably and sufficiently explain the circumstances surrounding their emotional injuries." *Smith v. LexisNexis Screening Sols., Inc.,* 837 F.3d 604, 611 (6th Cir. 2016). Evidence of emotional distress "includes evidence of physical injury, medical treatment for any psychological or emotional injury, or other witness corroboration of any outward manifestation of emotional distress." *Ricketson v. Experian Info. Sols., Inc.,* 266 F. Supp. 3d 1083, 1094 (W.D. Mich. 2017) (internal citations omitted). Emotional distress damages in FCRA suits should be recoverable only in "extreme cases." *See Butler v. Sterling, Inc.*, 210 F.3d 371 (6th Cir. 2000) (allowing for emotional distress damages under the Truth in Lending Act, a "complement" to the FCRA, only in "extreme cases").

Simply put, Plaintiff did not suffer the concrete and particularized injury necessary to establish Article III standing. *Spokeo*, 578 U.S. 330, 339-49; s*ee also Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 864 (6th Cir. 2020) ("[Plaintiff's] failure to allege anything other than anxiety makes us skeptical about whether he has

established an injury in fact.").

## VI. PLAINTIFF CANNOT ESTABLISH A CLAIM UNDER 15 U.S.C. § 1681g

15 U.S.C. § 1681g requires a consumer reporting agency, upon request, to "clearly and accurately disclose to the consumer" the information in the consumer's file and certain related information, including the sources of that information. 15 U.S.C. § 1681g(a). To establish a violation, a plaintiff must show that he made a proper request for disclosure under § 1681g, that the consumer reporting agency failed to provide the disclosures required by the statute, and that he suffered a cognizable injury as a result.

Here, Plaintiff has not identified any proper request for a § 1681g disclosure that Experian allegedly failed to honor. As noted above, Plaintiff claims he mailed a detailed dispute letter via certified mail on or about April 4, 2024. Dkt. 1 at 7. But Experian did not receive such a detailed dispute via certified mail on or about April 4, 2024, and Plaintiff has produced no certified mail receipt or any other evidence showing that Experian received the alleged letter. Exp. Decl. ¶ 18. Instead, on April 6, 2024, Plaintiff contacted Experian through the internet to dispute his 2023 Chapter 7 bankruptcy tradeline, and Experian initiated a reinvestigation and sent him a CDF when the reinvestigation was complete. Exp. Decl. ¶¶ 19–20, Exs. A–B.

Contrary to Plaintiff's allegation, Experian did in fact send Plaintiff a

notification of the results of its reinvestigation in the form of a CDF dated April 30, 2024, which "contains the required information showing how Plaintiff's tradelines were verified." Exp. Decl. ¶ 20, Ex. B. Plaintiff has not identified any specific omission from that disclosure, any statutory element of § 1681g that Experian allegedly failed to satisfy, or any evidence that Experian failed to disclose the sources of the information in Plaintiff's file. Nor has he shown that he was denied any access to his file information at all.

Plaintiff's generalized vague complaint regarding 1681g is unsupported by record evidence and contradicted by Experian's uncontroverted declaration and the CDF itself. Exp. Decl. ¶¶ 19–20, Ex. B. Because Plaintiff has not produced evidence that Experian failed to provide him with the disclosures required by § 1681g, or that he suffered any resulting injury, his § 1681g claim fails as a matter of law and summary judgment should be granted.

## CONCLUSION

For the reasons set forth herein, Plaintiff has not, and cannot, prove liability or damages in this matter and this Court should grant Experian summary judgment as a result. Wherefore, Experian prays this Court grant Experian summary judgment, enter judgment in its favor, and conclude this litigation, awarding costs and fees to Experian and such further relief to which it may be entitled.

Dated: February 27, 2026

/s/ Steven R. Zahn
Steven R. Zahn
SBN: 43332-VA
FBN: 1171830
TROUTMAN PEPPER LOCKE LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23454
Steve.zahn@troutman.com
Telephone: 757-687-7589
Facsimile: 757-687-7510

*Counsel for Experian Information Solutions, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 27, 2026 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and served via e-mail and regular mail upon:

Tremaine Manley
3019 Poe Road
Houston, TX 77051
832-348-0649
Pro Se Plaintiff

*/s/ Steven R. Zahn*
Steven R. Zahn

28